### HOLMES *v.* FORDNEY.

EVIDENCE—ERROR IN ADMISSION—HOW CURED—AGENT'S COMMISSIONS.

Error in permitting the plaintiff to testify, in a suit to recover a specified commission under a contract for the sale of timber, wherein defendant admits that the sum specified, if anything, is due, as to the customary commission for procuring sales of timber, is cured by the court's excluding further testimony of like character, and directing the jury that the plaintiff, if his version of the contract is found to be true, can recover no more than the amount agreed upon.

Error to Marquette; Stone, J. Submitted October 7, 1897. Decided December 7, 1897.

*Assumpsit* by David H. Holmes against Joseph W. Fordney to recover a commission on the sale of certain timber. From a judgment for plaintiff, defendant brings error. Affirmed.

*E. J. Mapes* and *Weadock & Purcell*, for appellant.

*Clark & Pearl*, for appellee.

LONG, C. J. The first count of the declaration states the claim of the plaintiff as one for reasonable compensation for his services as explorer, estimator, and timber commission dealer in making a sale for defendant of about 8,795,000 feet of pine, at $4 a thousand feet, board measure, claiming that the selling price was about $40,000. The declaration also contained the common counts. The plaintiff's proofs did not warrant a recovery on the first count; and on the trial the claim was made that, under the common counts, the plaintiff should recover $1,000 for his services in making a sale of the timber. The plea was the general issue. The plaintiff had verdict and judgment for the amount claimed.

The first assignment of error is based upon the ruling of the court in permitting the plaintiff to answer the question:

"Do you know what the custom is, and the ordinary price of commissions as fixed by custom under such circumstances, where sales are negotiated and made?"

The plaintiff had already testified to a conversation had with defendant in reference to a sale of the timber; that he met the defendant at Marquette, who asked him if he had a man to buy this timber, and that he told him he thought he had; that defendant then asked him who it was, when he stated to him:

"I asked him, before I would tell him who it was, what there was in it for me.  *  *  *
"Q. He asked you if you couldn't find a purchaser, and you told him you thought you could?
"A. Yes, sir.

" *Q.* And he asked you who it was, and you told him you would not tell until you found out how much there was in it for you?

"*A.* Yes, sir.

" *Q.* What did Mr. Fordney say to that inquiry on your part?

" *A.* He asked me how much I wanted. I told him I wanted a thousand dollars if my parties bought the timber.

"*Q.* The party you had that would buy it you referred to?

"*A.* Yes, sir; he said he would if they bought the timber.

"*Q.* He said he would pay you that if those parties you referred to bought the timber?

" *A.* Yes, sir."

Plaintiff had already testified that he had before that had some correspondence with Col. A. T. Bliss, of Saginaw, and the defendant, about the timber on these lands, and that the defendant had written him he would come up to Marquette and see him. Plaintiff testified that, after the above conversation, he told defendant that the parties to whom he thought he could make the sale were McCall & McBurney; that he had been over this timber several times, and examined it, and knew its character and quality, and had already had a talk with George McBurney, who was in the employ of McCall & McBurney, and that McBurney thought they would buy it at a reasonable figure, and wanted plaintiff to get an option on it; that, before defendant left Marquette, he introduced him to George McBurney, and told him he was the man with whom he had talked about the sale; that, after defendant left, plaintiff had further talk with McBurney, and was called into the office of the firm, and talked with by McBurney, of that firm, about the timber; that McCall & McBurney, some two or three weeks after this, caused an examination to be made of the timber, and, in the May following, bought this and a quantity of other timber from defendant, for $40,500. After this testimony was given, the question was asked, and answered under ob-

jection, of which complaint is now made, and upon which error is assigned.

We think the testimony wholly irrelevant and incompetent; but we are of the opinion that no error was committed which was prejudicial to the rights of the defendant, when we consider the ruling of the court further on in the case, and the charge to the jury. Other witnesses were called by plaintiff, and asked about these commissions, and were permitted to answer. The defendant was called in his own behalf, and testified that the contract made with the plaintiff was for $1,000 as commission, on condition that he sold the timber for $35,000 within 30 days, and that he had no other or different contract with plaintiff; that the plaintiff never made the sale; and he claimed, therefore, that he was under no legal obligation to pay the commissions. Defendant was then asked whether there was any custom regulating the commissions of a broker,—whether there was any established usage,— when the court said:

"I do not believe we ought to go into this question any further. The plaintiff cannot claim to recover to exceed a thousand dollars. He says that was the bargain, and the defendant says, if a bargain was made, it was on the basis of a thousand dollars; so let us not spend more time about this."

The court subsequently charged the jury substantially that, if they found the contract as claimed by plaintiff, and that no time for sale was fixed, and no amount stated for which the timber was to be sold, the plaintiff was entitled to recover the amount agreed upon as commissions. The court also submitted two special questions to the jury at the request of counsel for defendant:

(1) "Did Fordney agree to pay Holmes $1,000 upon the condition that he should procure a purchaser for the, pine within 30 days, at $35,000?" *Answer:* "No."

(2) "Did Holmes induce or procure McCall & McBurney to make the purchase?" *Answer:* "Yes."

It is not clear how it can now be claimed that the ques-

tions in reference to commissions had any influence upon the jury in arriving at their verdict. They were expressly told that, if plaintiff's version of the contract was found to be true, he could recover no more than the $1,000, and this upon the contract which he claimed was made for that amount.

But counsel contend that the chief error was in permitting the case to go to the jury at all, for the reason that, under the plaintiff's testimony, he was not entitled to recover upon the contract under which he now claims. It would be of no interest to the parties or others to set out here the testimony which, we think, had a tendency to show that the plaintiff's theory was sustained. The learned circuit judge thought there was sufficient evidence to go to the jury tending to show the plaintiff's case. We have examined the record with care, and find that it would have been error for the court below to have taken it from the jury.

This covers all the assignments of error.

The judgment must be affirmed.

The other Justices concurred.